UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | |
|---|---|
| In Re: Fedex Tariff Litigation | Civil Action No. 2:26-CV-02181-TLP |
| | Judge Thomas L. Parker |
| | **CLASS ACTION** |
| | **JURY TRIAL DEMANDED** |

## MAJORITY PLAINTIFFS' MOTION FOR APPOINTMENT OF INTERIM LEAD COUNSEL AND PLAINTIFFS' EXECUTIVE COMMITTEE AS INTERIM COUNSEL AND BRIEF IN SUPPORT

Majority Plaintiffs[1] respectfully move, under Rule 23(g) of the Federal Rules of Civil Procedure, to appoint the following attorneys to represent the putative Class in this consolidated class action case: **Interim Lead Counsel**: J. Gerard Stranch, IV, Stranch, Jennings & Garvey, PLLC ("SJG") (Nashville, Tennessee); and **Plaintiffs' Executive Committee**: Matthew E. Lee, Lee Segui PLLC ("Lee Segui"); Stuart A. Davidson, Robbins Geller Rudman & Dowd LLP ("Robbins Geller") (Boca Raton, Florida); John A. Yanchunis, Morgan & Morgan Complex Litigation Group ("Morgan & Morgan"); and Lynn A. Toops, Cohen & Malad, LLP ("Cohen & Malad") (collectively, the "Majority Plaintiffs' Proposed Leadership Group"). In support hereof, Majority Plaintiffs state as follows:[2]

---

[1] Majority Plaintiffs supporting this Motion are counsel from the following actions: *Anastopoulo v. FedEx Corp.*, No. 2:26-cv-02181 (W.D. Tenn.); *Deburro v. Federal Express Corp.*, No. 2:26-cv-02240 (W.D. Tenn.); *Avalos v. FedEx Corp.*, No. 2:26-cv-02289 (W.D. Tenn.); *Tran v. FedEx Corp.*, No. 2:26-cv-02290 (W.D. Tenn.); *Falode v. FedEx Corp.*, No. 2:26-cv-02291 (W.D. Tenn.); *Reiser v. FedEx Corp.*, No. 2:26-cv-02410 (W.D.Tenn.); *Anastopoulo v. FedEx Corp.*, No. 2:26-cv-02334 (W.D. Tenn.); *G-Force Powersports Inc. v. Federal Express Corp.*, No. 2:26-cv-02383 (W.D. Tenn.).

[2] Majority Plaintiffs have sought the position on this motion from defense counsel for Defendants Federal Express Corporation and FedEx Logistics, Inc. (collectively, "FedEx"), who has stated that FedEx takes no position on the Motion.

1

## I.   INTRODUCTION

Majority Plaintiffs, representing counsel from eight out of the twelve cases consolidated in this matter (58%), respectfully request that this Court appoint the Majority Plaintiffs' Proposed Leadership Group to serve as interim class counsel under Rule 23(g) of the Federal Rules of Civil Procedure. As recommended by the MANUAL ON COMPLEX LITIG. (Fourth) ("MCL") §21.272, counsel for Majority Plaintiffs have conferred amongst themselves and agreed that—subject to the Court's approval—the Majority Plaintiffs' Proposed Leadership Group satisfy the requirements of Rule 23(g) and should be appointed.

Majority Plaintiffs believe their agreed proposed leadership structure is appropriate here because a single Lead Counsel will promote efficiency while still retaining the valuable input, manpower, and resources of the additional Executive Committee members representing a diverse group of clients and geographies. The structure will also eliminate duplications of efforts, control costs, and ensure all plaintiffs and the putative Class have the benefit of a variety of experiences and perspectives and access to significant resources.

The Majority Plaintiffs' Proposed Leadership Group pledge to dedicate their ***personal*** time, substantial resources, talent, and extensive experience required to serve as interim class counsel, and work cooperatively with both other plaintiffs' counsel, counsel for Defendants Federal Express Corporation and FedEx Logistics, Inc. (collectively, "FedEx"), and this Court to move this case forward to a just, speedy, and cost-effective resolution.

## II.   ARGUMENT

### A.   Rule 23(g) Standards for Appointment of Interim Class Counsel

Under Rule 23(g)(3), "[t]he Court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3); *see also Wolpert v. Branch Banking Tr. & Co.*, 2023 WL 3263487, at *4 (E.D. Tenn.

2

Mar. 23, 2023). Appointment of interim class counsel is warranted when there are "competing or similar lawsuits pending." *Id.* (citation omitted). "[D]esignation of interim [class] counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Id.* at *4 n.3. As the Committee Notes to the 2003 amendments to Rule 23 emphasize, designation of interim class counsel prior to certification is appropriate because,

> it will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Rule 23(c)(1) recognizes that some discovery is often necessary for that determination. It also may be important to make or respond to motions before certification. . . . [Rule 23(g)(3)] authorizes the court to designate interim counsel to act on behalf of the putative class before the certification decision is made.

Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment.

In considering whom to appoint, the Court looks to the factors under Rule 23(g)(1): (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions and other complex litigation, as well as the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B); *see also* Fed. R. Civ. P. 23(g)(4). By far the most common method employed to select class counsel leadership is the private ordering method whereby counsel confer amongst themselves and agree on a leadership structure. MCL §21.272 ("By far the most common [method for selecting class counsel] is the so-called 'private ordering' approach: The lawyers agree who should be lead class counsel and the court approves the selection after a review to ensure that the counsel selected is adequate to represent the class

3

interests."); *see also In re Aluminum Phosphide Antitrust Litig.*, 1994 WL 481847, at \*5, \*7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel.").

**B.      Majority Plaintiffs' Proposed Leadership Group Have the Requisite Experience, Knowledge, Resources, and Personal Commitment to Manage and Prosecute This Case on Behalf of the Proposed Class, and a Track Record of Accomplishments**

**1.      Proposed Interim Lead Counsel: J. Gerard Stranch, IV, SJG**[3]

Mr. Stranch is a third-generation trial lawyer and the founding and managing member of SJG, the largest and most successful Tennessee-based class action firm. Mr. Stranch has a national practice, he has extensive experience in Tennessee, including organizing and managing complicated litigation in this District. He was the lead trial attorney and managed over twenty attorneys plus paralegals and clerks for the *Sullivan Baby Doe* opioids case against Purdue Pharmaceuticals, Malinkrodt, and Endo Health Solutions and Endo Pharmaceuticals, Inc. (*Staubus v. Purdue Pharma LP*, No. C41916-C (Tenn. Cir. Ct.)), which resulted in two bankruptcies that included multi-billion dollar national settlement deals for Purdue Pharma and Malinkrodt, and a default judgment on liability against Endo for repeated discovery violations. The landmark case settled as the parties were picking a jury for $35 million, the largest per capita recovery against Endo by multiple orders of magnitude.

Mr. Stranch's reputation for quality litigation and his ability to work fairly and cooperatively with co-counsel led to his selection from the hundreds of lawyers in the *In re National Prescription Opiate Litigation* MDL to serve and to be appointed as one of only three lawyers in private practice as class counsel for the Negotiation Class. Moreover, Mr. Stranch was

---

[3] Mr. Stranch's biography is attached hereto as **Exhibit A**.

appointed to serve on the steering committees of *In re Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation*, No. 15-MD-02672 (N.D. Cal.), which resulted in approximately $17 billion in settlements, believed to be the largest consumer class action settlement in history. He was co-lead counsel in *In re Alpha Corp. Securities Litigation*, which resulted in a $161 million settlement, and lead counsel in *Lankford v. Dow Chemical* (consumer protection class action), which resulted in a $4.2 million settlement. He helped obtain a $590.5 million settlement while serving on the executive committee in *Dahl v. Bain Capital Partners* (antitrust), and served as liaison counsel in *In re Regions Morgan Keegan Closed-End Fund Litigation*, resulting in a $62 million settlement. Furthermore, he was appointed to the Plaintiff Steering Committee for the *In re New England Compounding Pharmacy, Inc. Products Liability Litigation* MDL and the lawyer in charge of coordinating all Tennessee litigation, which was all resolved for over $230 million. Finally, Mr. Stranch's NEC litigation team achieved a $495 million jury verdict in the first trial against Abbott Laboratories in Saint Louis and the verdict was recently upheld by the Court of Appeals.

Mr. Stranch regularly litigates complex class actions in Tennessee state and federal courts, including as noted above. For recent examples, he was appointed Interim Co-Lead Counsel in *In re HCA Healthcare, Inc. Data Security Litigation* (M.D. Tenn.), in which millions of patients' data was disclosed. Moreover, Mr. Stranch was appointed Interim Lead Counsel in *Ducrepin v. United Seating & Mobility* (M.D. Tenn.). And he was appointed Interim Lead Counsel in *Smith v. Specialty Networks, LLC*, No. 1:24-cv-286 (E.D. Tenn.). Mr. Stranch is also litigating several other class actions in Tennessee: *Lytle v. Revance Therapeutics*, No. 23C1897 (Tenn. Cir. Ct.) (final approval granted); *Taylor v. Nissan N. Am., Inc.*, 3:24-cv-653 (M.D. Tenn.); *Edwards v. Concord Music Grp., Inc.*, No. 3:24-cv-00196 (M.D. Tenn.) (settlement-in-principle reached); *Lewis v.*

5

*Mountain View Hosp., LLC*, No. 3:24-cv-00175 (M.D. Tenn.) (settlement pending); *Arend v. Newcourse Comms., Inc. & First United Bank & Tr.*, No. 23C303 (Tenn. Cir. Ct.) (final settlement approval granted); and *Smith v. Human Tech., Inc.*, No. CH-24-0085 (Tenn. Ch. Ct.). Mr. Stranch also has served as Liaison Counsel in multiple class actions in this District, including in: (a) *In re: AME Church Employee Retirement Fund Litigation*, MDL 3025, Case No. 1:22-md-3035-STA-jay, which recently received preliminary approval for a recovery to Plaintiffs of $44.4 million (Docket Entry 1072), and had already received final approval of $60 million (Docket Entry 825); *In re: Regions Morgan Keegan Securities ERISA Litigation*, MDL No. 2009, Case No. 2:09-md-2009, where Mr. Stranch also served as Liaison Counsel for the Plaintiffs (settlement of roughly $62 million). Mr. Stranch's extensive experience in class action litigation makes him superbly qualified to serve as Interim Lead Counsel. In recognition of Mr. Stranch's experience, he was asked to speak on a Panel at The 2025 Sixth Circuit Court of Appeals annual conference in Memphis on MDL litigation.

In addition, Mr. Stranch has already devoted significant work to this case. He has been investigating the claims and underlying facts in this case since before the various complaints were filed. He also coordinated the consolidation of the litigation with FedEx's counsel. Finally, Mr. Stranch has been a leader in this litigation from the beginning. For example, when multiple related cases were filed outside of this District, Mr. Stranch worked with other plaintiffs' counsel and FedEx's counsel to coordinate refiling their cases in this District, to avoid the delays inherent in MDL proceedings. Lastly, Mr. Stranch and SJG have the necessary significant resources to devote to prosecuting this litigation without any outside funding.

6

### 2.    Proposed Plaintiffs' Executive Committee

### a.    Stuart A. Davidson, Robbins Geller[4]

Robbins Geller is the largest class action firm in the world, with over 200 lawyers in ten offices throughout the country, including in Nashville. Mr. Davidson is the Co-Managing Partner of Robbins Geller's Boca Raton, Florida office. Over the last 24 years, Mr. Davidson has dedicated his professional life to representing consumers in complex class actions and MDLs, received numerous awards for his work, and is a writer and frequent speaker at conferences concerning class action practice. His cases have recovered over $1.5 billion for aggrieved class members in antitrust, consumer fraud, and data privacy cases, including: *In re Facebook Biometric Info. Privacy Litig.*, No. 3:15-cv-03747-JD (N.D. Cal.) (Class Counsel; achieving $650 million cash, non-reversionary fund, the then-largest ever privacy class action recovery); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal.) (Class Counsel; $117.5 million recovery in the largest data breach in history); and *In re EpiPen Mktg., Sales Practices & Antitrust Litig.*, No. 2:17-md-02785-DDC-TJJ (D. Kan.) (Class Counsel; $609 million recovery in certified class action alleging antitrust claims involving effort to delay the generic EpiPen); *Genworth Long-Term Care Litigation*, Nos. 3:19-cv-00049-REP, 3:21-cv-00019-REP, and 3:22-cv-00055-REP (E.D. Va.) (Co-Lead Class Counsel in three cases on behalf of long-term care ("LTC") insureds, recovering hundreds of millions of dollars in cash damages and changing the way LTC insurers do business); *In re NHL Players' Concussion Injury Litig.*, No. 0:14-md-02551-SRN-BRT (D. Minn.) (Co-Lead Counsel representing retired NHL players in MDL regarding injuries suffered due to repetitive head trauma and concussions).

As a firm, Robbins Geller and its attorneys, often as sole lead counsel, have recovered over

---

[4] Mr. Davidson's biography is attached hereto as **Exhibit B**.

$50 billion for aggrieved class members, achieving numerous record-setting class recoveries, including:

- *Jaffe v. Household Int'l, Inc.*, No. 1:02-cv-5893 (N.D. Ill.) ($1.575 billion, largest ever post-verdict fraud settlement);

- *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 (N.D. Cal.) (over $17 billion recovered, the largest ever consumer class settlement);

- *In re Enron Corp. Sec. Litig.*, No. H-01-3624 (S.D. Tex.) (as sole lead counsel, recovered over $7 billion for a class of injured shareholders—the largest recovery ever obtained in any shareholder action in history);

- *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (N.D. Ohio) (Plaintiffs' Executive Committee in sprawling MDL concerning nationwide prescription opioid epidemic, recovering to date over $50 billion); and

- *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.) ($5.7 billion, largest ever antitrust settlement).[5]

If appointed by the Court, Mr. Davidson will treat this case with the highest priority and personal commitment. What Mr. Davidson enjoys most about his practice is the opportunity to mentor young lawyers and to collaborate and discuss difficult issues with his colleagues on both sides of the "v." He is a team player who is determined to add value to every case he works on and will treat every person he interacts with—not only counsel and the Court, but also support staff,

---

[5] In Tennessee federal courts specifically, Robbins Geller has successfully recovered over $1 billion for class members. A list of just some of these cases and recoveries include: *Schuh v. HCA Holdings, Inc.*, No. 3:11-cv-01022 (M.D. Tenn.) ($215 million); *St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co., Inc.*, No. 3:18-cv-00988 (M.D. Tenn.) ($179 million); *In re Dollar Gen. Corp. Sec. Litig.*, No. 3:01-cv-0388 (M.D. Tenn.) ($172.5 million); *In re Prison Realty Sec. Litig.*, No. 3:99-cv-0452 (M.D. Tenn.) ($107 million); *Garden City Emps.' Ret. Sys. v. Psychiatric Sols., Inc.*, No. 3:09-cv-00882 (M.D. Tenn.) ($65 million); *Grae v. Corr. Corp. of Am.*, No. 3:16-cv-02267 ($56 million); *Morse v. McWhorter*, No. 3:97-cv-0370 (M.D. Tenn.) ($51 million); *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, No. 3:18-cv-01368 (M.D. Tenn.) ($36 million); *In re Bridgestone Sec. Litig.*, No. 3:01-cv-0017 (M.D. Tenn.) ($30 million); *Winslow v. BancorpSouth, Inc.*, No. 3:10-cv-00463 (M.D. Tenn.) ($29.25 million); and *Beach v. Healthways, Inc.*, No. 3:08-cv-00569 (M.D. Tenn.) ($23.6 million).

Court Clerks, and witnesses—with the utmost civility and respect, which is a quality that has been ingrained in him over his 30 years of practice.

### b.    Matthew E. Lee, Lee Segui[6]

Matthew Lee is a founding partner at Lee Segui PLLC. Prior to that, Mr. Lee was a senior partner at one of the largest plaintiffs-side class action firms in the world, where he co-chaired the firm's civil rights and employment practice group. Mr. Lee has been practicing law for 20 years, and his practice is national in scope and focused on consumer class actions, civil rights and employment litigation, and complex commercial litigation. He has served as lead counsel for plaintiffs in class actions and other complex litigation around the country, including leading a successful consolidated MDL in the Western District of Tennessee over the past four years: *In re: AME Church Employee Retirement Fund Litigation*, MDL No. 3035 (W.D. Tenn.), (over $106,000,000 recovered, one of the largest recoveries ever in retirement plan litigation).

Mr. Lee was appointed and served as co-lead interim class counsel in many other cases, including: lead counsel in two class actions against IBM arising from unpaid sales commissions practices, *Comin v. International Business Machines Corp.*, No. 19-cv-07261-JD (N.D. Cal.) (settled) and *Engle v. International Business Machines, Corp.*, Index No. 654556/2020 (Supreme Court of New York) (pending); co-lead counsel in *Edwards v. CSX Transportation, Inc.*, No. 7:18-cv-169-BO (E.D.N.C.) (Dkt. No. 74, appointing interim co-lead counsel) (Eastern District of North Carolina and involving devastating flood damages after Hurricanes Matthew and Florence and estimated damages in excess of $250,000,000); and co-lead counsel in biometric information and privacy class actions against Facebook, Inc. (Northern District of California) and against Snap, Inc. (Snapchat) (Southern District of Illinois) (both settled). Mr. Lee also served on the Plaintiff's

---

[6] Mr. Lee's biography is attached hereto as **Exhibit C**.

Steering Committee in MDL No. 2688 (*In Re. Windsor Window Wood Clad Window Products Liability Litigation*, and played an integral role supporting the lead counsel in MDL No. 2514 (*In Re: Pella Corporation Architect and Designer Series Window Marketing, Sales Practices and Products Liability Litigation*) and in MDL 2047 (*In Re: Chinese-Manufactured Drywall Products Liability Litigation*) bearing responsibility for working with expert witnesses, taking depositions, assisting with critical briefing, and arguing motions.

From the beginning of his legal career, Mr. Lee's primary focus and interest has been trial advocacy. He earned his law degree from Wake Forest University School of Law and was very active in its nationally recognized trial advocacy program. He was the 2005 Zeliff Trial Competition Champion, a regional finalist at the 2006 American Association for Justice (AAJ) Trial Advocacy Competition, the AAJ Student Chapter President, and was selected as a member of the Order of Barristers. Since then, he has tried numerous complex cases to multi-million-dollar verdicts, both in and outside of North Carolina. In August of 2018, Mr. Lee served as lead counsel on a jury trial in Wilmington, NC involving breaches of fiduciary duties that resulted in a seven-figure recovery for his client, including a significant punitive damages award. In April 2021, Mr. Lee served as lead counsel for a two-week jury trial in the Western District of Washington, that resulted in a verdict for his client of $11,085,672 in a case where his client alleged he was wrongfully terminated. Mr. Lee has received numerous awards for his work, and has been selected for SuperLawyers (in the area of Class Actions and Mass Torts), Best Lawyers (Mass Torts / Class actions – Plaintiffs), Business North Carolina's "Legal Elite," and National Trial Lawyers: Top 100, and published numerous articles and given presentations on issues in complex plaintiff's litigation. Among other things, he served as the 2020-2021 chair of the Products Liability, Class Actions, and Mass Torts section of the North Carolina Advocates for Justice (NCAJ).

### c. Lynn A Toops, Cohen & Malad[7]

Ms. Toops and her firm of CohenMalad, LLP ("CM") should be appointed interim class counsel. She is highly qualified to serve in this role, to adequately represent and advance the interests of the class.

Ms. Toops and CM enjoy an excellent reputation as a leading class action law firm across the country. *See, e.g.*, *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. C 10-4038- MWB (N.D. Iowa Nov. 9, 2011) (commenting that "fabulous results" were achieved for the class with "incredible efficiency"). Indeed, for the past 50 years, CM has served as class counsel in numerous local, statewide, multi-state, nationwide, and even international class actions. *See, e.g.*, *In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000) (settlement of $1.25 billion for claims relating to conversion of bank accounts and property of victims of the Holocaust); *Raab v. R. Scott Waddell, in his official capacity as Commissioner of the Indiana Bureau of Motor Vehicles et al.*, Nos. 49D12-1303-PL-008769, 49D11-1310-PL- 038001 (Ind. Super. Ct.) (settlements, including after trial and judgment, of approximately $100 million in overcharges for motor vehicle and license fees). CM has also served in leadership positions in numerous multidistrict litigation matters and state court consolidations of multiple matters. *See, e.g.*, *Pain Pump Device Litig.* (CM served as National Coordinated Counsel); *In re: Johnson & Johnson Talcum Powder Prods. Mktg., Sales Practices, and Prods. Liability Litig.*, No. 16-md-2738-FLW-LHG (D.N.J. Dec. 6, 2016), ECF No. 73 (appointing C&M to plaintiffs' steering committee).

Of particular importance here, Ms. Toops has extensive experience in data breach and privacy matters. Ms. Toops and her team are currently litigating dozens of actions challenging inadequate cybersecurity protocols that resulted in the unauthorized access, theft, and/or

---

[7] Ms. Toops's biography is attached hereto as **Exhibit D**.

distribution of highly sensitive data. Ms. Toops and her team are also currently litigating dozens

of actions challenging the use of third-party tracking source code on the websites and patient

portals of numerous health institutions across the country. Ms. Toops currently serves as sole lead

counsel in other data breach and privacy class actions currently pending in Indianapolis

Commercial Court, *In Re: Columbus Regional Hospital Pixel Litigation,* Cause No. 49D01-2412-

PL-056314, *In re Gregory & Appel Data Incident Litigation*, No. 49D01-2503-PL-011309. She

litigated and negotiated the unprecedented phishing settlement in *McKenzie v. Allconnect*, No.

5:15-cv-00359 (E.D. Ky.), in which a federal district court approved a final settlement for current

and former employees of Allconnect whose 2017 Form W-2 data was sent to an unauthorized third

party in a phishing attack. The settlement included direct cash payments to every single settlement

class member without the need for any claim form submission, a total of seven years of credit

monitoring and identity theft protection, and reimbursement for any Settlement Class Member that

suffered a documented but otherwise non-covered economic loss from the data breach.

Ms. Toops has repeatedly been appointed in leadership of data breach classes consisting of

many millions of individuals:

- In January 2026, Ms. Toops was appointed to the Plaintiffs' Executive Committee in *In re Oracle Corporation Data Breach Litigation,* 25-cv-1854-ADA-SH (W.D. Tex.), a "hub and spoke" data breach incident in Oracle's systems that occurred beginning in July 2025. Oracle is an Austin, TX based cloud-based computing services and data storage company serving thousands of corporate clients

- In November 2025, Ms. Toops was appointed as Interim Class Counsel in *In Re: Inotiv. Inc., Data Incident Litigation,* Case No. 25-cv-00046-PPS (N.D. Ind.), arising out of the data breach of Blue & Co., affecting over ten thousand of its employees;

- In October 2025, Ms. Toops was appointed as Interim Class Counsel in *In Re: Blue & Co. Data Incident Litigation,* Case No. 25-cv-01802-SEB-MG (S.D. Ind.), arising out of the data breach of Inotiv, affecting thousands of employees;

- In July 2025, Ms. Toops was appointed as Co-Lead Interim Class Counsel in *In Re: Cerner/Oracle Data Breach Litigation,* Case No. 24-cv-259-CV-W-BP (Wd. Mo.), a "hub

and spoke" data breach arising out of the data breach of Cerner (now Oracle Health)'s legacy servers in  January 2025, affecting over eighty healthcare providers nationwide and millions of patients;

- In February 2025, Ms. Toops was appointed to the Plaintiffs' Executive Committee in *Faulkner v. MoneyGram Payment Systems, Inc.,* 3:24-cv-02557-X (N.D. Tex.), a consolidated class action arising out of a data breach of MoneyGram, one of the largest money transfer services companies in the world, operating more than 430,000 locations across the globe.

- In November 2024, Ms. Toops was appointed to the Executive Committee in *In Re: Evolve Bank & Trust Customer Data Security Litigation,* No. 24-md-03127-SHL (W.D. Tenn.), a data breach class of over 7.6 million customers.

- In October 2024, Ms. Toops was appointed as Interim Class Counsel in *Owens v. MGM Resorts International,* No. 23-cv-1480-RFB-MDC, a data breach class of 74 million.

- In August 2024, Ms. Toops was appointed to the Executive Committee in *Negron v. Ascension Health*, No. 4:24-cv-669-JAR (E.D. Mo. Aug. 6, 2024), a data breach class of millions of patients nationwide.

- In August 2024, Ms. Toops was appointed to the Plaintiff's Executive Committee in *In Re: HealthEquity, Inc. Data Security Incident Litigation,* No. 2:24-cv-00528 (D. Utah), a data breach class of 4.3 million.

- In October 2023, Ms. Toops was appointed to the Plaintiffs' Executive Committee in *Lurry v. Pharmerica Corporation,* No. 3:23-CV-297-RGJ (W.D. Ky.), a data breach class of 5.8 million.

*See also Smith v. Apria Healthcare, LLC*, Case No. 1:23-cv-01003-JPH-KMB (Dkt. No. 49) (Toops appointed interim co-lead counsel in a data breach class of 1.8 million); *In re Lurie Children's Data Breach Litigation,* Case No. 2024CH00869, (Cook County, Ill.) (same in a case with nearly 1 million class members); *In re CorrectCare Data Breach Litigation*, Case No. 5:22-319-DCR (Feb. 22, 2023) (Dkt. No. 33) (same in a case of nearly 500,000).

### d.    John A. Yanchunis, Morgan & Morgan[8]

John A. Yanchunis leads Morgan & Morgan's class action group. Morgan & Morgan is

---

[8] Mr. Yanchunis's biography is attached hereto as **Exhibit E**.

America's largest injury law firm with over 1,100 lawyers in offices throughout the United States, including offices throughout Tennessee. Its depth as a trial firm, and its self-funded financial resources, allow it to undertake the largest and most significant cases throughout the country. Mr. Yanchunis—whose career as a trial lawyer began over 41 years ago following the completion of a two-year clerkship with United States District Judge Carl O. Bue, Southern District of Texas (now deceased)—has efficiently and expeditiously led many Multidistrict Litigation (MDL) and non-MDL class action proceedings, including as Lead or Co-Lead Counsel in some of the largest class actions. He has focused his practice on class action litigation for over 28 years.

As a result of his experience in insurance and complex litigation, beginning in 2005, he was selected by Tom Gallagher, the Chief Financial Officer for the state of Florida and a member of the Florida Cabinet, to serve as lead counsel for the Florida Department of Financial Services and the Florida Department of Insurance Regulation (the insurance regulators of Florida) in their investigations of the insurance industry on issues concerning possible antitrust activity and other possible unlawful activities regarding the payment of undisclosed compensation to insurance brokers. He served as lead regulator counsel and worked with a core group of state Attorneys General from the National Association of Attorneys General, which were selected to conduct the investigations. The insurance regulator for Florida was the only insurance regulator in the group. The litigation that was filed and the related investigations netted millions of dollars in restitution for Florida consumers and resulted in significant changes in the way commercial insurance is sold in Florida and across the country.

During his career, he has tried numerous cases in state and federal courts, including one of the largest and longest insurance coverage cases in U.S. history, which was filed in 1991 by the Celotex Corporation and its subsidiary, Carey Canada, Inc. During the seventeen years the case

14

pended, he served as lead counsel for several insurance companies regarding coverage for asbestos and environmental claims. The case was tried in three phases over several years, beginning in 1992. He was also lead counsel for these parties in the subsequent appeals that followed a judgment in favor of his clients.

In 2025, in a case against Google in the Northern District of California, San Francisco Division, *Rodriguez, et al, v. Google, LLC*, No. 20-cv-04688 (N.D. Cal.), he, along with his co-counsel, were appointed as co-lead counsel for a class certified over Google's opposition. This class case was tried in August and the first part of September of this year and resulted in a verdict of over $425 million. He does not have a reputation for filing and then settling class cases.

Mr. Yanchunis was recognized in 2023 and in 2026 as a "Titan of the Plaintiffs Bar" for his work in class actions. In 2020, 2021, 2023, 2024, and 2025 he was named one of the MVPs in the area of Cybersecurity and Privacy. Similarly, in 2016 and then in 2020, Mr. Yanchunis was recognized by the National Law Journal as a Trailblazer in the Area of Cybersecurity & Data Privacy. In 2020 and in 2026, Mr. Yanchunis was named Florida Lawyer of the Year by the Daily Business Review, and in 2022, he was awarded the Best Mentor award in the state of Florida by the same publication. In 2023, he was named Consumer Lawyer of the Year by The Florida Bar's Consumer Protection Committee for his accomplishments in the area of data privacy. In 2024, he was named a finalist for Attorney of the Year by ALM/Law360 and he was a finalist for Lawyer of Year by The National Law Journal. He received a Lifetime Achievement Award in July 2025, from the same organization. In 2025, he was recognized by Lawdragon in the following categories: 500 Leading Lawyers in America (recognition he received again in 2026), 500 Leading Global Cyber Lawyers ,500 Global Plaintiff Lawyers, and 500 Leading Plaintiff Lawyers in America.

In 2024, the class action practice group that he leads at his firm was awarded Litigation

15

Department of the Year in the state of Florida by ALM/Law360, and in the same year his practice group was a national finalist for Litigation Department of the Year by The National Law Journal. In 2026, his practice group was recognized by Law360 as Cyber/Privacy Group of the Year.

Exhibiting his leadership skills and his ability to work collaboratively with others, Mr. Yanchunis has served in leadership positions on many professional committees and boards, most prominently as a member of the Board of Directors of The Florida Bar Foundation, a member of The Florida Board of Bar Examiners appointed by the Florida Supreme Court (5-year term, and he continues by appointment to date as an Emeritus Member), and an elected member for two terms to The Board of Governors of The Florida Bar, and to The Young Lawyers Division of The Florida Bar. He has served on The Florida Bar's Consumer Protection Committee, including serving as its Chair. He has also served as an expert in ethical issues in class litigation for The Florida Bar in disciplinary proceedings.

In his profession, he received the Florida Bar Foundation President's Award of Excellence, the Public Justice Impact Change Award, and for his work in representing a class of elderly indigent Floridians on Medicaid in a suit against the state of Florida, which resulted in an increase in the benefits to class members, he was awarded The Florida Bar Elder Law Section Chair's Honor Award.

He has been recognized as a Super Lawyer for over three decades and is AV rated by Martindale Hubbell.

**C.      Majority Plaintiffs' Proposed Leadership Group Have Performed Substantial Work Identifying and Investigating the Claims in This Action**

This litigation is both novel and complex. Never before has the federal government ordered and implemented tariffs (duties) on goods imported into the United States from so many countries in such a short time span, requiring hundreds of thousands of American small businesses and

citizens to incur massive additional costs to obtain their goods, only for those same tariffs to be declared void *ab initio* one year later. As the United States Chamber of Commerce explained, tariffs "cause uncertainty and disrupt supply chains and are an especially big problem for small businesses that don't have as many resources to withstand them. [They] also can spur retaliation against American products being exported, harming American workers." Tariffs, U.S. CHAMBER OF COMMERCE, https://www.uschamber.com/tariffs (last visited Apr. 22, 2026); *see also* Sydney Flood, *The hidden costs of tariffs on small businesses*, NAT'L RETAIL FOUND. (July 18, 2025), https://nrf.com/blog/the-hidden-costs-of-tariffs-on-small-businesses.

Once the Supreme Court declared the tariffs unconstitutional on February 20, 2026, in *Learning Resources, Inc. v. Trump*, 607 U.S. __, 146 S. Ct. 628 (2026), those same small businesses (many financially decimated by the tariffs), and individuals sought out sophisticated legal counsel to assess their legal remedies against the importers-of-record, like FedEx, to whom they had paid the tariffs and ancillary fees. The lawyers comprising the Majority Plaintiffs' Proposed Leadership Group quickly got to work, consulting with experts, and researching and analyzing potential legal theories, including the impact of FedEx's ongoing lawsuit against the federal government in the United States Court of International Trade ("CIT") seeking a "full refund" of all IEEPA duties it paid to the United States. *See* Complaint, ¶ 5, *Fed. Express Corp. v. U.S. Customs & Border Prot.*, No. 26-cv-01150 (Ct. Int'l Trade Feb. 23, 2026), ECF 2.

Upon recognizing that FedEx's complaint before the CIT seeks recovery "for themselves" of the very funds that their clients and putative Class members paid to FedEx, *id.*,[9] and that FedEx

---

[9] Indeed, the federal government's recently announced tariff-refund process only permits eligible "importers," like FedEx, to seek refunds, which are expected to reach well over $100 billion. *See* Stephan Bisaha, *The tariff refund process has begun for businesses. What about customers?*, NPR (Apr. 22, 2026), https://www.npr.org/2026/04/22/nx-s1-5791663/the-tariff-refund-customers (explaining how "the portal wasn't for most individual customers. Instead, the refunds would go

expressed no plans to refund the hundreds of millions of dollars collected from them for tariff-related brokerage, advancement, and other fees, Majority Plaintiffs' Proposed Leadership Group swiftly took action, preparing the lawsuits against FedEx which are now pending before this Court.

Majority Plaintiffs' Proposed Leadership Group are confident in the strength of their claims against FedEx but recognize that many of these issues at play will be ones of first impression for this Court. Majority Plaintiffs' Proposed Leadership Group are more than up for that challenge.

**D.  Majority Plaintiffs' Proposed Leadership Group Are Able to—and Will—Dedicate the Necessary Resources to Fund and Advance the Litigation**

The resources that the Majority Plaintiffs' Proposed Leadership Group have already and will continue to commit to the case also strongly supports their appointment. *See Guidelines and Best Practices for Large and Mass-Tort MDLs*, at 39 (2d ed., Sept. 2018) ("Duke Guidelines") (Best Practice 3C(iii): stating, in part, that applicants should "provide information about the resources they have available to contribute to the litigation").

The Majority Plaintiffs' Proposed Leadership Group are widely acknowledged as some of the preeminent and most successful class action law firms in the country. Their resources, including collectively dozens of lawyers and dozens of offices around the globe, are unmatched. Their firms are extremely well capitalized and are not utilizing outside litigation funding, and have the most robust human, technological, investigatory, and financial resources in the field.[10]

---

to whoever directly paid Customs as the importer of record, often a U.S. company. For [millions of small businesses and other American consumers], if they want a tariff refund, they will have to rely on the goodwill of companies to pass those refunds along, or on class action lawsuits to force a return.").

[10] Besides substantial human and capital resources, Robbins Geller has among the most extensive technological resources of any firm in the country. The firm boasts an unparalleled high-speed disk system that is highly scalable and can host, ***onsite***, a nearly limitless amount of data. The firm also uses the most advanced document-review platforms (RelativityOne), which, combined with

Collectively, they have recovered tens of billions of dollars for their clients in trials and settlements, and courts have appointed the firms' attorneys to leadership positions in hundreds of cutting-edge class actions. The Majority Plaintiffs' Proposed Leadership Group's ability to draw from this well-developed repository of experience and information as well as the skills and talents of experienced attorneys and staff members located across the country will allow them to streamline the litigation.

> **E.      Additional Factors Supporting Appointment of Majority Plaintiffs' Proposed Leadership Group**

As noted, the proposed leadership structure has the overwhelming support of the plaintiffs and the law firms involved in this consolidated case. This majority support weighs in favor of appointing Majority Plaintiffs' Proposed Leadership Group. *See, e.g.*, *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 2012 WL 5833604, at *2 (D. Del. Nov. 16, 2012) (finding that group which "represents 16 of the 24 cases . . . ha[d] made a stronger showing under Rule 23(g)(1)(A)(i) and (iv)").

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations owed as officers of the Court, all of which are critical to the successful management of the litigation. *See* MCL §10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the

---

its disk storage capabilities, enables Robbins Geller to effectively host extremely large document productions and dramatically reduce the cost paid to outside vendors.

past, divide work, avoid duplication, and manage costs." Duke Guidelines at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id.* Nowhere could these sentiments be more accurate than among the counsel proposed here; indeed, these attorneys are currently working together on several other class actions around the country. In other words, Majority Plaintiffs' Proposed Leadership Group are well-suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

In addition, Majority Plaintiffs' Proposed Leadership Group and their respective firms are geographically diverse, with offices across the United States. *Rubenstein v. Scripps Health*, 2021 WL 4554569, at *3 (S.D. Cal. Oct. 5, 2021) ("Establishing a Steering Committee will also provide . . . geographic diversity."); *In re Seagate Tech. LLC Litig.*, 2016 WL 3401989, at *1 (N.D. Cal. June 21, 2016) (appointing interim class counsel and noting "the firms' willingness and ability to commit to a time-consuming process, in addition to their geographic diversity.").

## III.    CONCLUSION

For the foregoing reasons, Majority Plaintiffs respectfully request that the Court enter an Order appointing under Rule 23(g): J. Gerard Stranch, IV as Interim Lead Counsel, Matthew E. Lee, Stuart A. Davidson, John A. Yanchunis, and Lynn A. Toops as members of Plaintiffs' Executive Committee, and granting such other and further relief as the Court deems just and proper.

Dated: June 15, 2026                                Respectfully submitted,

                                                    */s/ J. Gerard Stranch, IV*
                                                    J. Gerard Stranch, IV (TN BPR 23045)
                                                    **STRANCH, JENNINGS & GARVEY, PLLC**

20

The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN  37203
Telephone:  615/254-8801
gstranch@stranchlaw.com

***Proposed Interim Lead Counsel***

Matthew E. Lee (*pro hac vice*)
**LEE SEGUI, PLLC**
421 N. Harrington Street, Suite 460
Raleigh, NC 27603
Tel: (919) 421-7784
mlee@leesequi.com

Stuart A, Davidson (*pro hac vice*)
**ROBBINS GELLER RUDMAN & DOWD, LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Tel: (561) 750-3000
sdavidson@rgrdlaw.com

John A. Yanchunis (*pro hac vice*)
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tel: (813) 275-5272
jyanchunis@forthepeople.com

Lynn A. Toops (*pro hac vice*)
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com

***Proposed Members of Plaintiffs' Executive
Committee***

21

## <u>CERTIFICATE OF CONSULTATION</u>

Pursuant to Local Rule 7.2(a)(1)(B), the undersigned certifies that on June 15th 2026, Counsel for Majority Plaintiffs conferred with Counsel for Defendant FedEx regarding this motion via email. Counsel for Majority Plaintiffs also held discussions amongst themselves over email regarding the contents of this motion.

*/s/ J. Gerard Stranch, IV*
J. Gerard Stranch, IV (TN BPR 23045)

22

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June 2026, I filed the foregoing with the Clerk of

the Court using the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (TN BPR 23045)

23