IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____x
                                 :

**IN RE: FEDEX TARIFF LITIGATION**    :      Case No. 2:26-cv-02181-TLP

                                 :

_____x

**RESPONSE OF PLAINTIFFS CYCLE LIMITED, LLC AND NICHOLAS METCALF IN
OPPOSITION TO THE COMPETING MOTIONS FOR
APPOINTMENT OF INTERIM LEAD AND CO-LEAD CLASS COUNSEL**

Plaintiffs CYCLE LIMITED, LLC and NICHOLAS METCALF, by and through undersigned counsel, respond in opposition to the pending leadership motions. *See* Doc. ## 24 and 25 (collectively "the Motions"). For the reasons that follow, the Motions should be denied in part.

## INTRODUCTION

Two groups of able plaintiffs' lawyers ask this Court to install them as the sole leadership of this consolidated litigation. The Majority motion (Doc. # 24) proposes a single interim lead and a four-member executive committee; the Minority motion (Doc. # 25) proposes a three-lawyer co-lead slate. Plaintiffs Cycle Limited, LLC and Nicholas Metcalf do not dispute that the movants are accomplished class-action practitioners, nor do they ask the Court to deny leadership to the qualified field. They oppose the two motions for a narrower and more fundamental reason: each asks the Court to approve a complete leadership structure that contains no tax lawyer, no certified public accountant, and no appellate specialist, in a case whose decisive questions are questions of tax, customs, and appellate law.

That omission is not a quibble about pedigree. This case exists because the Supreme Court invalidated more than $160 billion in tariffs imposed under the International Emergency Economic

1

Powers Act, *see Learning Res., Inc. v. Trump*, 146 S. Ct. 628 (2026), and because FedEx, as importer of record, now seeks to keep the resulting refunds that, in equity, belong to the class. Whether and how the class recovers will turn on the scope of IEEPA duty authority, on customs valuation and the importer-of-record refund mechanism, on the accounting reconstruction of FedEx's pass-through and refund methodology, and, ultimately, on the preservation and presentation of those issues for appellate review. Those are not the competencies that define a consumer mislabeling or data-breach class action. They are the competencies of the two attorneys whose pending application this response asks the Court not to foreclose: Joseph A. DiRuzzo, III, and Justin K. Gelfand.

Rule 23(g) does not direct the Court to ratify the largest bloc of like-minded firms. It directs the Court to ensure that the lawyers it appoints can "fairly and adequately represent the interests of the class" in *this* case. Fed. R. Civ. P. 23(g)(1)(B), (g)(4). The governing federal standard is one of fit between the leadership and the litigation, and it is the same standard whether drawn from Rule 23(g), from the leadership provisions of new Rule 16.1, or from the *Duke Standards* on which the movants themselves rely. The movants urge the Court to value diversity within the leadership team. They are correct that diversity strengthens a class team. The diversity that matters most in this litigation, however, is not geography or biography but expertise, and on that axis both proposed structures are homogeneous. The Court should decline to approve either motion as an exclusive leadership structure and should, consistent with the movants' pending Plaintiffs' Steering Committee application, ensure that the structure it approves includes DiRuzzo and Gelfand.

## BACKGROUND

Thirteen actions arising from FedEx's collection of IEEPA tariff surcharges have been consolidated before this Court. These actions reach the Court not by transfer from the Judicial Panel

on Multidistrict Litigation under 28 U.S.C. § 1407, but by consolidation of related cases that the Majority movants coordinated to refile in this District, in their own words, "to avoid the delays inherent in MDL proceedings." Doc. # 24, at 6. The matter therefore proceeds as a consolidated putative class action governed by Rule 23, a posture confirmed by the docket itself, which bears an ordinary civil number rather than a multidistrict "md" docket.

After *Learning Resources* voided the underlying duties, the importers of record, FedEx among them, became the conduit through which more than $100 billion in refunds is expected to flow. FedEx has already sued to recover those duties for itself in the United States Court of International Trade, seeking a "full refund" of the IEEPA duties it remitted.[1] The class theory is that FedEx may not pocket what its customers bore.

The Majority motion is brought by counsel from eight of the consolidated cases and proposes J. Gerard Stranch, IV as interim lead, with Stuart A. Davidson, Matthew E. Lee, Lynn A. Toops, and John A. Yanchunis as the executive committee. The Minority motion proposes Michael R. Reese, Carlos F. Ramirez, and Jason P. Sultzer as co-leads. The biographies of the Motions submit are, without exception, the biographies of consumer-protection, data-breach, antitrust, securities, and mass-tort class-action specialists. They are impressive within that domain. Neither motion identifies a single proposed leader who practices tax law, holds an accounting credential, or maintains an appellate practice. By separate motion, Plaintiffs Cycle Limited, LLC and Nicholas Metcalf have asked the Court to appoint DiRuzzo and Gelfand of MARGULIS GELFAND DIRUZZO &

---

[1] *See* Compl. ¶ 5, *Fed. Express Corp. v. U.S. Customs & Border Prot.*, No. 26-cv-01150 (Ct. Int'l Trade Feb. 23, 2026), ECF No. 2 (FedEx, as importer of record, seeking a "full refund" of the IEEPA duties at issue); *see also* Majority motion at 12 (Doc. # 24) (acknowledging FedEx's parallel Court of International Trade action).

LAMBSON to the Plaintiffs' Steering Committee. This response addresses why the leadership structures proposed in the Motions should not be approved in a form that excludes that competency.

## ARGUMENT

### I.    RULE 23(g) REQUIRES THE COURT INDEPENDENTLY TO ENSURE THAT THE LEADERSHIP STRUCTURE FITS THIS CASE, NOT MERELY TO RATIFY THE LARGEST BLOC.

Rule 23(g)(1)(A) lists the familiar factors: the work counsel has done, counsel's experience in the relevant *types of claims*, counsel's knowledge of the applicable law, and the resources counsel will commit. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) (emphasis added). The Rule then confers an independent, non-delegable duty on the Court: it "may...consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class," and it "must...appoint" only counsel "adequate" to that task. Fed. R. Civ. P. 23(g)(1)(B), (g)(4).

The Majority motion leans heavily on its numerical support, urging that a 58% bloc favors its slate. That argument mistakes private ordering for the standard. Private ordering is a convenience the Court may consult; it is not a substitute for the adequacy inquiry the Rule commits to the Court alone. The point is underscored here by the record itself: the bar has produced *two* competing lead applications and a separate PSC application. A field that fractures into rival slates has not "agreed" on anything, and a 58% plurality is not the consensus on which the private-ordering rationale depends.[2] When counsel cannot agree, the Court's independent gatekeeping role is at its zenith, and

---

[2]The eight movant cases identified in the Majority motion represent, by Majority Plaintiffs' own count, *"58%"* of the consolidated actions. *See* Majority motion at 1 (Doc. # 24). A 58% share is not the "overwhelming" consensus that private ordering presupposes, and the simultaneous filing of a rival lead slate (Doc. # 25) and of the present movants' PSC application confirms that the bar has *not* coalesced.

the governing question becomes not who is most numerous but which structure best equips the class for the contest ahead.

Majority Plaintiffs also cannot invoke the multidistrict-litigation canon selectively. Their motion rests on the *Manual for Complex Litigation* and on the *Duke Guidelines* for "Large and Mass-Tort MDLs," yet they tell the Court they structured this case to "avoid" the MDL track. DE 24, at 6. They may not claim the parts of that framework that favor a majority bloc while disclaiming the parts that do not. And the most current expression of that framework cuts against them. Although new Rule 16.1, effective December 1, 2025, governs Section 1407 proceedings and so does not control this consolidation, its leadership instruction is squarely on point and reflects the considered judgment of the federal rulemakers: leadership is to be selected by the Court, deliberately, with attention to "the needs of the litigation" and to counsel's "differing experiences, skills, knowledge, and backgrounds." Fed. R. Civ. P. 16.1 advisory committee's note (2025).[3] Whether the source is Rule 23(g)(1)(B), the *Duke Guidelines*, or the Rule 16.1 leadership note, the federal standard is the same, and it is a standard of fit, not headcount.

## II.    THIS LITIGATION IS, AT ITS CORE, A TAX AND CUSTOMS RECOVERY ACTION, AND BOTH PROPOSED STRUCTURES OMIT THAT COMPETENCY.

The Majority motion candidly describes this case as "novel and complex," presenting issues "of first impression." Doc. # 24, at 9. That is correct, and it is dispositive of the adequacy question.

---

[3]Rule 16.1, effective December 1, 2025, governs proceedings transferred under 28 U.S.C. § 1407 and therefore does not control this single-district consolidation; it is cited as instructive, the more so because Majority motion relies on the multidistrict-litigation case-management canon. The Rule directs the parties to address the appointment, structure, and responsibilities of leadership counsel, *see* Fed. R. Civ. P. 16.1(b)(3), and its Advisory Committee Note confirms that where a putative class is included, "Rule 23(g) applies" to the appointment of class counsel. Fed. R. Civ. P. 16.1 advisory committee's note (2025).

The novelty does not lie in the class-action vehicle, which is familiar; it lies in the substantive law the vehicle must carry. The merits depend on the reach and limits of IEEPA duty authority; on customs classification, valuation, and the importer-of-record refund architecture; and on a forensic reconstruction of how FedEx assessed, remitted, and now proposes to recover the duties and ancillary brokerage and advancement fees. The defense will be litigated at least in part through the prism of FedEx's own parallel refund suit in the Court of International Trade. A leadership team without a member fluent in that body of law is a team that must learn the case's decisive subject matter on the class's time and at the class's expense.

Neither movant group supplies that fluency. The biographies attached to both the Majority and Minority motions, read in full, describe a single professional silo: plaintiffs'-side consumer and complex class litigation. That is valuable, and it is not enough by itself. To be precise, and fair to the movants: certain of them have handled appeals that arose out of their class work, and several lead very large firms with appellate capacity. But neither slate pairs an appellate specialist, one who is Board Certified in appellate practice and has argued thirty-five appeals across eight federal courts of appeals, with command of the tax and customs law on which this case turns. And neither slate includes any tax practitioner, any certified public accountant, or any lawyer who has tried a federal tax case.

### III.    THE MOVANTS ARE RIGHT THAT DIVERSITY STRENGTHENS A CLASS TEAM; THE DIVERSITY THAT MATTERS HERE IS DIVERSITY OF EXPERTISE, WHICH THEIR STRUCTURES LACK.

Both motions invoke diversity as a virtue. The Majority motion praises the "geographic[] divers[ity]" of its firms and the "variety of experiences and perspectives" its committee would bring. Doc. # 24, at 2, 13. The Minority motion goes further, offering the personal background of one

proposed co-lead as an affirmative qualification. Doc. # 25, at 1. Movants are right about the premise. The question their motions do not confront is diversity *of what*.

The governing federal standard answers that question directly and answers it the same way in every source. The Advisory Committee Note to new Rule 16.1 directs the appointing court to weigh counsel's "differing experiences, skills, knowledge, and backgrounds," "the needs of the litigation," and each lawyer's "expertise," and to consider "how the lawyers will complement one another." Fed. R. Civ. P. 16.1 advisory committee's note (2025). The *Duke Standards* say the same, instructing that leadership selection keep in mind the benefits of "diversity of experience, skills, and backgrounds" and reflect the requirements of the case. *Duke Standards, Best Practices* 3C, 4E. And the empirical literature on group performance points the same way: across decades of research, the diversity that improves decision-making on complex, non-routine problems is informational and cognitive diversity, the presence of members who bring genuinely different knowledge, tools, and perspectives to the table.[4]

Measured against that standard, the proposed structures are not diverse where it counts; they are homogeneous. A leadership group may be spread across a dozen cities and still be monolithic in expertise, and these are. Every proposed leader is a consumer or complex class-action generalist.

---

[4]The empirical literature is consistent. *See* Katherine W. Phillips, *How Diversity Makes Us Smarter*, Sci. Am. (Oct. 1, 2014) (synthesizing decades of organizational research and concluding that diverse groups "are more innovative than homogeneous groups," with the benefit traced to the differing information and perspectives members supply), *available at* https://www.scientificamerican.com/article/how-diversity-makes-us-smarter/; Lu Hong & Scott E. Page, *Groups of Diverse Problem Solvers Can Outperform Groups of High-Ability Problem Solvers*, 101 Proc. Nat'l Acad. Sci. U.S.A. 16385 (2004), *available at* https://www.pnas.org/doi/10.1073/pnas.0403723101; Scott E. Page, *The Difference: How the Power of Diversity Creates Better Groups, Firms, Schools, and Societies* (2007) (describing, for complex problems, the phenomenon the author terms "diversity trumps ability"), *available at* https://press.princeton.edu/books/paperback/9780691271743/the-difference.

None brings the tax, customs, accounting, or specialist appellate dimension that this particular case requires. Adding that dimension is precisely what makes a leadership team, in the movants' own idiom, smarter: it supplies the missing information and the missing tools at the points where the case will actually be won or lost, at class certification, at the accounting of damages, and on appeal.

**IV.     DiRuzzo and Gelfand Supply the Missing Dimension, Without Duplication and Without Displacing Lead Counsel.**

The complementary competency this structure needs is not hypothetical; it is on file. DiRuzzo is a partner who holds a J.D., a Master of Accountancy, and is a license as a certified public accountant, who practiced international tax at PricewaterhouseCoopers, and who was elected a Fellow of the American College of Tax Counsel in 2025. He has tried federal tax cases (both jury and non-jury) and argued thirty-five appeals across eight federal circuits and is a Florida Bar Board Certified Specialist in appellate practice. Most to the point, he served as lead counsel in *Duncan v. Governor of the Virgin Islands*, 48 F.4th 195 (3d Cir. 2022), where he secured vacatur and remand of the denial of class certification in a putative class action against a government defendant over unlawful tax-refund practices. That is, almost to the fact pattern, the appellate posture this case may reach: a class, a government-adjacent refund mechanism, and a certification fight whose outcome is decided in the Circuit.

Gelfand is a former Trial Attorney in the Tax Division of the United States Department of Justice, where he prosecuted complex financial-fraud cases nationwide and, by the Division's own recognition, prevailed in every federal trial and appeal he handled. He has served as lead trial counsel in more than thirty jury trials across more than ten federal districts, argued before four federal circuits, and is presently litigating both a putative class action and a products-liability MDL. Prosecutorial training is not ornamental here: it is the skill set for reconstructing how a large

institution documented and defended its fee and pass-through decisions, and for converting that reconstruction into discovery strategy, damages theory, and the cross-examination of corporate and expert witnesses.

Two further features make their inclusion additive rather than redundant. *First,* the firm is a boutique, which means DiRuzzo and Gelfand, not junior associates, will personally execute the work assigned to them. *Second,* DiRuzzo's accounting credential allows the team to analyze FedEx's refund methodology internally, which reduces the class's dependence on retained experts at the investigative stage and sharpens expert preparation at the merits and damages stages. Their proposed contribution is deliberately bounded: IEEPA and customs analysis, accounting reconstruction of the refund methodology, class-certification and damages briefing, and appellate preservation and strategy. None of that competes with what the movants offer. It is the complementarity that the Rule 16.1 leadership note commends, counsel who "complement one another" rather than replicate one another. It does not compete with the movants' work. It completes it.

## V.    THE RELIEF SOUGHT IS MODEST AND RISK-REDUCING.

Plaintiffs do not ask the Court to deny leadership to the movant firms or to disturb the appointment of an interim lead from the qualified field. They ask only that the Court not approve either motion as an *exclusive* leadership structure, and that whatever structure the Court approves incorporate DiRuzzo and Gelfand on the Plaintiffs' Steering Committee, as their pending motion requests. That relief costs the class nothing and insures it against a structural blind spot on the very issues that will decide the case.

In the alternative, if the Court prefers to set leadership on a fuller record, the orderly course is the one the federal rulemakers have now modeled in Rule 16.1: to address the structure and

9

responsibilities of leadership at an initial management conference, on the parties' submissions, where the expertise the class will need can be matched to the demands of the case before any exclusive structure is fixed. Either path protects the class. Approving an exclusive structure now, on these motions and on this record, does not. A leadership team that is broad in class-action firepower but absent in tax, customs, and specialist appellate capability is not, for this case, an adequate one. The deficiency is curable, and the cure is already before the Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs Cycle Limited, LLC and Nicholas Metcalf respectfully request that the Court (1) decline to grant the Majority and Minority motions to the extent either seeks approval of a leadership structure that omits substantive tax, customs, and dedicated appellate capability; (2) in any event, appoint Joseph A. DiRuzzo, III and Justin K. Gelfand to the Plaintiffs' Steering Committee, consistent with their pending motion; and (3) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III
Fla. Bar No. 0619175
MARGULIS GELFAND DIRUZZO & LAMBSON
500 East Broward Blvd., Suite 900
Fort Lauderdale, Florida 33394
Tel: (954) 615-1676
jd@margulisgelfand.com

/s/ Justin K. Gelfand
Justin K. Gelfand
Mo. Bar No. 62265
MARGULIS GELFAND DIRUZZO & LAMBSON
138 N. Meramec
St. Louis, Missouri 63105
Tel: (781) 454-8302
justin@margulisgelfand.com

*Counsel for Plaintiffs CYCLE LIMITED, LLC and NICHOLAS METCALF*

Dated:  June 29, 2026

10

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of June, 2026, a copy of the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.


/s/ Joseph A. DiRuzzo, III
Joseph A. DiRuzzo, III