**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**MEMPHIS DIVISION**

| | |
|---|---|
| **IN RE: FEDEX TARIFF LITIGATION** | Case No.: 2:26-cv-02181-TLP-atc<br>ALL CASES<br><br>Judge Thomas L. Parker |

**PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiffs Jared Tran, Natalia Crespo Rosado, Gloria Avalos, G-Force Powersports Inc., David DeBurro and Marc Weinberg (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Consolidated Class Action Complaint against Defendants Federal Express Corporation and FedEx Logistics, Inc. (collectively, "Defendants" or "FedEx"). Plaintiffs allege the following based on personal knowledge as to their own actions and on the investigation of counsel as to all other matters.

## INTRODUCTION

1. For almost a year, the federal government collected tariffs on certain products imported into the United States, under the International Emergency Economic Powers Act ("IEEPA"). The President invoked the IEEPA by declaring national emergencies tied to two alleged foreign threats: the rise of illegal drugs from foreign nations and large trade deficits.

2. On February 20, 2026, the Supreme Court of the United States held that the IEEPA did not authorize those tariffs. The tariffs were therefore invalid—in other words, they were illegal from the moment they were imposed.

3. Since the federal government imposed the illegal IEEPA tariffs, FedEx has charged and collected tariffs (also known as import duties) and ancillary fees from consumers and businesses like Plaintiffs (collectively, "Consumers"). This class action arises from FedEx's practice of collecting those illegal import duties, together with processing and other ancillary fees, from Consumers.

4. In many situations, including those at issue here, the Consumer, who ultimately received the shipped goods, paid the tariff to FedEx, who then remitted the tariff to U.S. Customs and Border Protection ("CBP"). However, it is only FedEx who, as importer of record, may seek and receive refunds for the illegally assessed tariffs. As of May 2026, FedEx had requested $3.3

billion in IEEPA refunds and had acknowledged receiving approximately $800 million of that amount.

5. In other words, FedEx seeks to recover—and has already recovered—hundreds of millions, if not billions, of dollars in tariffs that Consumers funded and for which FedEx served merely as a conduit to the federal government. Therefore, it is the Consumers who are entitled to refunds of the tariffs they paid.

6. This action presents an actual, concrete controversy ripe for adjudication. FedEx collected from Consumers, like Plaintiffs and Class Members, both unlawful IEEPA duties and ancillary fees that no law validly authorized. As such, Plaintiffs and Class Members are entitled to reimbursement of all tariffs and ancillary fees that FedEx unlawfully charged, plus interest.

## PARTIES

7. Plaintiff Jared Tran is, and at all relevant times was, a citizen of the State of Utah. Jared Tran is a resident of the State of Utah and intends to remain domiciled in Utah.

8. Plaintiff Gloria Avalos is, and at all relevant times was, a citizen of the State of Illinois. Gloria Avalos is a resident of the State of Illinois and intends to remain domiciled in Illinois.

9. Plaintiff Marc Weinberg is, and at all relevant times was, a citizen of the State of New Jersey. Marc Weinberg is a resident of the State of New Jersey and intends to remain domiciled in New Jersey.

10. Plaintiff Natalia Crespo Rosado is, and at all relevant times was, a citizen of the State of New York. Natalia Crespo Rosado is a resident of the State of New York and intends to remain domiciled in New York.

11. Plaintiff David DeBurro is, and at all relevant times was, a citizen of the State of Massachusetts. David DeBurro is a resident of the State of Massachusetts and intends to remain

domiciled in Massachusetts.

12. Plaintiff G-Force Powersports Inc. is a South Carolina corporation with its principal place of business located at 712 Old Rutherford Road, Taylors, South Carolina 29687.

13. Defendant Federal Express Corporation is a Delaware corporation with its principal place of business in Memphis, Tennessee. Federal Express Corporation is a wholly owned subsidiary of FedEx Corporation, a Delaware holding company, and operates FedEx's express transportation and international shipping services. When goods are shipped into the United States through FedEx's international shipping services, Federal Express Corporation transports the goods and, through its affiliate FedEx Logistics, Inc., provides customs brokerage services and serves as the importer of record for consumer shipments processed as informal entries.

14. Defendant FedEx Logistics, Inc. is a New York corporation with its principal place of business in Memphis, Tennessee. FedEx Logistics, Inc. is a wholly owned subsidiary of FedEx Corporation and an affiliate of Federal Express Corporation, under common ownership and control. FedEx Logistics, Inc. is a licensed customs broker that serves as the importer of record and entry filer for consumer shipments transported through FedEx's international shipping services, including, upon information and belief, Plaintiffs' shipments at issue in this action. Upon information and belief, FedEx Logistics, Inc. advanced the IEEPA duties, then collected those advances from Consumers, and now seeks to recover from the government the IEEPA duties that Consumers, including Plaintiffs and Class Members, funded.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332, because this is a class action in which the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; the proposed

class has more than 100 members; and at least one Class Member is a citizen of a state different from Defendants. This Court also has supplemental jurisdiction under 28 U.S.C. §1367(a) because all claims alleged herein form part of the same case or controversy under Article III of the United States Constitution.

16. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. §2201 because an actual controversy exists between the parties regarding Defendants' obligations to (a) return the IEEPA duties and ancillary fees they collected to the Consumers who paid them, and (b) return any IEEPA duty refunds FedEx recovers from the United States.

17. This Court has personal jurisdiction over Defendants because they maintain their principal places of business in this District. Defendants have also purposefully availed themselves of the laws, rights, and benefits of the State of Tennessee.

18. Venue is proper under 28 U.S.C. §1391 because Defendants reside and maintain their principal places of business in this District, and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in or emanated from this District.

## FACTUAL ALLEGATIONS

### A. IEEPA Tariffs at Issue

19. Enacted in 1977, the IEEPA gives the President certain tools to address unusual and extraordinary foreign threats to American national security, foreign policy, or the United States' economy.

20. If the President identifies such a threat, the IEEPA allows the President to "investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or

privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest." 50 U.S.C. §§1701(a), 1702(a)(1)(B).

21. On February 1, 2025, the President invoked the IEEPA to impose tariffs on goods from Mexico, China, and Canada. *See* Exec. Orders Nos. 14193, 14194, and 14195.

22. The President later issued additional executive orders using the IEEPA to impose tariffs. On April 2, 2025, for example, the President declared a national emergency related to foreign trade and economic practices and imposed "reciprocal" tariffs of 10% on products from all countries, effective April 5, 2025, with additional country-specific rates effective April 9, 2025. *See* Exec. Order No. 14257, Regulating Imports With a Reciprocal Tariff to Rectify Trade Practices That Contribute to Large and Persistent Annual United States Goods Trade Deficits, 90 Fed. Reg. 15041 (Apr. 2, 2025) ("Reciprocal Tariffs").

23. Beginning in February 2025, Defendants charged and collected from Consumers tariffs and tariff-related charges purportedly authorized under the IEEPA and the executive orders invoking it.

24. The IEEPA tariffs and ancillary fees were not part of the price of the goods shipped or the price of shipping itself; Defendants instead billed them separately.

### B. The IEEPA Tariffs Were Unlawful *Ab Initio*

25. Numerous importers challenged the legality of the IEEPA tariffs, arguing that the IEEPA did not give the President statutory authority to impose them.

26. On February 20, 2026, the Supreme Court agreed, holding in *Learning Resources Inc. v. Trump*, 607 U.S. 229, 252 (2026), that the IEEPA does ***not*** grant the President "the power to impose tariffs" and that the IEEPA tariffs were illegal from their inception.

27. In reaching that holding, the Supreme Court observed that:

a. The section of IEEPA cited by the government never mentions tariffs (*id.* at 248);

b. IEEPA had never been used by any President to impose tariffs (*id*. at 245);

c. The Constitution reserves the powers to tax and impose duties for Congress (*id.* at 240-41); and

d. The enormous scope of the tariffs that President Trump sought to impose represented an "extraordinary power" that lacked "clear congressional authorization" (*id* at 255).

28. For each of those reasons, the Supreme Court held that the IEEPA did not grant, and has never granted, the President unilateral authority to impose tariffs, and that the IEEPA tariffs imposed by President Trump were illegal from their inception.

29. As a result of that decision, the IEEPA tariffs that Defendants passed through to Plaintiffs and Class Members, as well as ancillary fees that were based on IEEPA tariffs, are and were unlawful, invalid, and void from their inception.

30. Despite lacking lawful authority, Defendants charged, collected, and retained tariffs and ancillary fees from Plaintiffs and Class Members.

### C. FedEx's Role as a Customs Broker and Importer of Record

31. FedEx serves as a customs broker and importer of record when goods are shipped internationally into the United States via FedEx.

32. In its capacity as a customs broker and importer of record, FedEx makes payments for duties, taxes, and fees to the CBP on behalf of the Consumer who is the receiver of the imported goods. FedEx then invoices and collects those amounts that it paid to CBP from the Consumer, as well as additional ancillary fees.

33. Therefore, it is the individual business or consumer, not FedEx, who actually pays the tariff. FedEx merely serves as a pass-through entity that pays the duty to CBP and then collects

reimbursement from the Consumer along with additional charges—administrative brokerage, disbursement, and late fees—that are collected and retained by FedEx to increase its profit.

34. When FedEx invoices a Consumer for tariffs and/or ancillary fees, FedEx separately lists such tariffs and fees as separate and distinct from the price paid for the item being shipped and the cost of transporting the item.

35. Such ancillary fees were often greater than the duties imposed under the IEEPA.

36. FedEx represented to Consumers that these charges were mandatory through the presentation of an invoice, reflected actual incurred tariff costs, and were calculated based upon lawful customs valuation methodology.

37. Consumers bore the economic burden of the unlawful IEEPA tariffs, not Defendants.

38. The IEEPA tariffs were never intended to serve as sources of profit for businesses or conduits through which the government could funnel money from Consumers to businesses like FedEx.

### D. FedEx Receives Refunds as Importer of Record Despite Not Paying Tariffs

39. On March 4, 2026, the Court of International Trade, in *Atmus Filtration, Inc. v. United States*, ordered CBP to stop liquidating IEEPA duties and to reliquidate previously liquidated IEEPA duties where possible, and indicated that the relief extended to "all importers of record" that paid IEEPA duties, including importers that had not filed their own refund lawsuits.[1]

[1] *See Atmus Filtration, Inc. v. United States*, No. 26-01259 (Ct. Int'l Trade Mar. 4, 2026), ECF No. 21.

40. In response, CBP implemented the Consolidated Administration and Processing of Entries (CAPE) system. The CAPE system permitted entities to apply for IEEPA tariff refunds, which would be processed in a streamlined fashion.

41. However, CBP only made the CAPE system available for importers of record, like FedEx, to apply for and receive refunds. CBP did not provide a manner for consumers like Plaintiffs and Class Members who ultimately paid the IEEPA tariffs to collect refunds from either the government or from entities like Defendant that charged tariff-related costs.

42. As of May 31, 2026, FedEx has filed claims for roughly $3.3 billion in IEEPA refunds with CBP, and has received roughly $800 million in refunds to date.[2]

43. FedEx announced its intention to issue some amount of refunds to Consumers. In its Q4 2026 earnings call, FedEx Chief Customer Officer Brie A. Carere said that "beginning in August [of 2026], we will be passing these refunds through to our customers."[3]

44. According to FedEx's website however, that FedEx is only issuing refunds to business and individual Consumers that make affirmative claims for the refunds. FedEx retains sole discretion as to who qualifies for refunds and whether any person or entity will actually receive a refund, regardless of whether they qualify under FedEx's terms.[4]

45. As many Consumers may never make claims for the refunds the illegal IEEPA tariffs they paid, FedEx will be unjustly enriched by keeping those unclaimed funds.

46. In any case, FedEx has made no legally binding commitment to refund Consumers.

---

[2] FedEx, Annual Report (Form 10-k) at 42 (May 31, 2026), available at https://www.sec.gov/Archives/edgar/data/1048911/000104891126000105/fdx-20260531.htm

[3] FedEx Corp., Earnings Call Transcript: Q4 FY26, 1 (June 23, 2026), https://s21.q4cdn.com/665674268/files/doc_financials/2026/q4/Earnings-Transcript-Q4FY26.pdf.

[4] https://ieepa-refunds.fedex.com (last accessed Oct. 22, 2026)

47. FedEx was unjustly enriched by collecting and retaining money to which it was not legally entitled, including tariff refunds from the CBP. Plaintiffs and Class Members paid IEEPA tariffs through FedEx, which acted as a conduit. By collecting a refund and using those funds for its own benefit for months, FedEx is unjustly enriching itself at the expense of Plaintiffs and Class Members, including, but not limited to, by receiving interest from the monies rightfully belonging to Consumers but will only benefit FedEx. Put another way, FedEx is profiting from the IEEPA tariffs FedEx charged Plaintiffs and the Class Members.

48. In addition, FedEx retains sole discretion on what categories of payments are eligible for refund. FedEx only intends to refund IEEPA tariffs and interest, as calculated by the CBP (FedEx will not remit interest that accumulates while FedEx waits to distribute refunds). Any other charges related to IEEPA tariffs are excluded.

49. For example, FedEx charges a "disbursement fee" when FedEx "pay[s] duties and taxes on your behalf."[5] FedEx describes this disbursement fee as "part of our ancillary charges." In other words, FedEx charged ancillary fees for paying an illegal IEEPA tariff on the behalf of others.

50. FedEx was unjustly enriched by collecting and retaining ancillary charges related to IEEPA tariffs that FedEx would not have charged (and Plaintiffs would not have paid) absent the IEEPA tariffs.

51. Importantly, FedEx charged Consumers for the IEEPA tariffs and ancillary fees separately and at a different time from when it charged consumers for ordinary shipping services. Those shipping charges were typically assessed to different entities, as most consumers such as

[5] FedEx.com, "What is a disbursement fee", available at https://www.fedex.com/en-gt/customer-support/faq/duties-taxes-imported-goods/paying-duties-taxes/disbursement-fee-shipping.html (last visited Oct. 23, 2026).

Plaintiffs did not even contract with FedEx for the delivery of goods they purchased from international sources or shippers. Because of that, the charges for tariffs and ancillary fees were not necessarily subsumed within the total cost of FedEx's shipping services.

52. On information and belief, Defendants would often not even inform consumers that they owed duties until the day a package was to be delivered.

53. Defendants led Consumers to believe that they had no choice but to pay duties and ancillary fees in order to receive their package.

54. Defendants were unjustly enriched by collecting and retaining money to which they were not legally entitled.

55. Plaintiffs and Class Members suffered economic injury as a direct result of Defendants' conduct, including payment of unlawful tariff-related charges and ancillary fees.

56. Defendants' conduct was uniform and systematic, affecting thousands of Consumers nationwide, and was carried out pursuant to standardized policies and practices.

57. In practical terms, FedEx has received, and will continue to receive, a windfall: it has already recouped tariff costs from Consumers in addition to ancillary fees that resulted from the void and invalid IEEPA tariffs, and it has recovered and will continue to recover those same unlawful tariff payments from the federal government. Absent relief from this Court, FedEx will continue to retain funds obtained through unlawful charges.

## PLAINTIFFS' ALLEGATIONS

***Plaintiff Jared Tran***

58. On or around January 15, 2026, Plaintiff Jared Tran purchased skiwear from a company located in Germany.

59. When he placed the order, Plaintiff Tran did not know that FedEx would be the

company responsible for shipping the goods to him, nor did he know that he would be assessed tariffs and ancillary fees.

60. On February 2, 2026, he received an invoice from FedEx in the amount of $65.10.

61. Specifically, Plaintiff Tran was charged $50.10 in tariffs and $15 for a "Disbursement Fee."

62. Plaintiff Tran paid the invoice to FedEx.

63. Plaintiff Tran has not received any refund from FedEx for the tariffs or ancillary fees that he paid.

64. Absent the unlawful IEEPA tariff scheme, Plaintiff Tran's shipments would have entered the United States entirely Duty-Free, no customs entry would have been required, and Plaintiff Tran would have incurred neither the duties nor the brokerage, advancement, and other ancillary fees charged by FedEx. The entirety of the sums charged to Plaintiff Tran, including both the void duties and the fees for processing a customs entry that should never have been filed, is thus directly attributable to the IEEPA tariffs.

***Plaintiff Gloria Avalos***

65. On or around September 12, 2025, Plaintiff Avalos purchased items from a company located in the Netherlands.

66. When she placed the order, Plaintiff Avalos did not know that FedEx would be the company responsible for shipping the goods to her, nor did she know that she would be assessed tariffs and ancillary fees.

67. After Plaintiff Avalos had already paid for her purchase and shipping, FedEx sent her an email notification notifying her that she had a balance due. The balance was $48.97 for tariffs and ancillary fees.

68. In reliance on FedEx's representations, Plaintiff Avalos paid these charges. As a result, Plaintiff Avalos suffered economic injury by paying the now voided IEEPA tariffs and the inflated and deceptive fees.

69. Plaintiff Avalos has not received any refund from FedEx for the tariffs or ancillary fees that she paid.

70. Absent the unlawful IEEPA tariff scheme, Plaintiff Avalos' shipments would have entered the United States entirely Duty-Free, no customs entry would have been required, and Plaintiff Avalos would have incurred neither the duties nor the brokerage, advancement, and other fees charged by FedEx. The entirety of the sums charged to Plaintiff Avalos, including both the void duties and the fees for processing a customs entry that should never have been filed, is thus directly attributable to the IEEPA tariffs.

***Plaintiff Marc Weinberg***

71. On or around December 10, 2025, Plaintiff Weinberg purchased a wristwatch from a company located in Japan.

72. When he placed the order, Plaintiff Weinberg did not know that FedEx would be the company responsible for shipping the goods to him, nor did he know that he would be assessed tariffs and ancillary fees.

73. At no point during the purchase process did Plaintiff Weinberg directly deal with FedEx to ship him the goods he purchased.

74. Plaintiff Weinberg received his purchase as expected on January 9, 2026.

75. On January 22, 2026, Plaintiff Weinberg received an invoice from FedEx for tariffs and associated ancillary fees in the amount of $469.78. A Merchandise Processing Fee of $33.58 and an administrative fee of $15.00 were assessed alongside $421.20 in IEEPA tariffs. Payment

of these charges came as a surprise to him as he believed he paid all shipping costs at the time of purchase.

76. Nonetheless, Plaintiff Weinberg paid FedEx the $469.78 in tariff related import charges and associated ancillary fees.

77. Plaintiff Weinberg has not received any refund from FedEx for the tariffs or related fees that he paid.

78. Absent the unlawful IEEPA tariff scheme, Plaintiff Weinberg's shipments would have entered the United States entirely Duty-Free, no customs entry would have been required, and Plaintiff Weinberg would have incurred neither the duties nor the brokerage, advancement, and other fees charged by FedEx. The entirety of the sums charged to Plaintiff Weinberg, including both the void duties and the fees for processing a customs entry that should never have been filed, is thus directly attributable to the IEEPA tariffs.

***<u>Plaintiff Natalia Crespo Rosado</u>***

79. On December 12, 2025, Plaintiff Crespo Rosado purchased a wool cloak from a merchant in Pakistan.

80. When she placed the order, Plaintiff Crespo Rosado did not know that FedEx would be the company responsible for shipping the goods to her, nor did she know that she would be assessed tariffs and ancillary fees.

81. At no point during the purchase process did Plaintiff Crespo Rosado directly deal with FedEx to ship her the goods she purchased.

82. Plaintiff Crespo Rosado received her purchase as expected.

83. After receiving her package, Plaintiff Crespo Rosado received an invoice from FedEx by mail. This invoice informed her of $13.74 in tariff charges that she owed to FedEx.

84. Plaintiff Crespo Rosado paid FedEx the $13.74 on February 16, 2026.

85. Plaintiff Crespo Rosado has not received any refund from FedEx for the tariffs or ancillary fees that she paid.

86. Absent the unlawful IEEPA tariff scheme, Plaintiff Crespo Rosado's shipments would have entered the United States entirely Duty-Free, no customs entry would have been required, and Plaintiff Crespo Rosado would have incurred neither the duties nor the brokerage, advancement, and other fees charged by FedEx. The entirety of the sums charged to Plaintiff Crespo Rosado, including both the void duties and the fees for processing a customs entry that should never have been filed, is thus directly attributable to the IEEPA tariffs.

***Plaintiff David DeBurro***

87. In December of 2025, Plaintiff DeBurro purchased a velvet blazer from a seller located in India.

88. The blazer was shipped via FedEx.

89. On January 27, 2026, Plaintiff DeBurro received an invoice in the mail from FedEx directing him to pay $18.73 in IEEPA tariffs and ancillary fees.

90. Specifically, Plaintiff DeBurro was charged $3.73 in tariffs and $15 for a "Disbursement Fee."

91. Plaintiff DeBurro paid FedEx $18.73 on or around March 2, 2026.

92. Plaintiff DeBurro has not received any refund from FedEx for the tariffs or ancillary fees that he paid.

93. Absent the unlawful IEEPA tariff scheme, Plaintiff DeBurro's shipments would have entered the United States entirely Duty-Free, no customs entry would have been required, and Plaintiff DeBurro would have incurred neither the duties nor the brokerage, advancement, and

other fees charged by FedEx. The entirety of the sums charged to Plaintiff DeBurro, including both the void duties and the fees for processing a customs entry that should never have been filed, is thus directly attributable to the IEEPA tariffs.

***Plaintiff G-Force Powersports***

94. Between February 4, 2025, and February 24, 2026, Plaintiff G-Force Powersports placed orders for multiple products from foreign manufacturers, including motorcycle parts from Italian manufacturers.

95. The manufacturers used FedEx to ship the motorcycle parts to Plaintiff G-Force Powersports.

96. The motorcycle parts from Italy were subject to a 15% tariff, which FedEx paid as the importer of record.

97. For instance, in or about January 2026, Plaintiff G-Force Powersports received an invoice from FedEx for the tariff on one item, including related brokerage, advancement, and other fees (labeled as a Merchandise Processing Fee), totaling $661.18.

98. Plaintiff G-Force Powersports paid the invoice on or about January 20, 2026.

99. Further, in or about February 18, 2026, Plaintiff G-Force Powersports received an invoice from FedEx for the tariff on one item, including related brokerage, advancement, and other fees, totaling $2,174.04.

100. Plaintiff G-Force Powersports paid the invoice on or about March 17, 2026.

101. Plaintiff G-Force Powersports has not received any refund from FedEx for the tariffs or ancillary fees that it paid.

102. Absent the unlawful IEEPA tariff scheme, Plaintiff G-Force Powersports' shipments would have entered the United States entirely Duty-Free, no customs entry would have

been required, and Plaintiff G-Force Powersports would have incurred neither the duties nor the brokerage, advancement, and other fees charged by FedEx. The entirety of the sums charged to Plaintiff G-Force Powersports, including both the void duties and the fees for processing a customs entry that should never have been filed, is thus directly attributable to the IEEPA tariffs.

## CLASS ACTION ALLEGATIONS

103. Plaintiffs bring this action on behalf of themselves and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclasses are defined as follows:

> **Nationwide Class:** All individuals or entities that paid fees, surcharges, duties, and other tariff-related amounts to FedEx purportedly imposed pursuant to tariffs declared under the IEEPA (the "Class").
>
> **New York Subclass:** All individuals or entities in the State of New York that paid fees, surcharges, duties, and other tariff-related amounts to FedEx purportedly imposed pursuant to tariffs declared under the IEEPA (the "New York Subclass").
>
> **New Jersey Subclass:** All individuals or entities in New Jersey that paid fees, surcharges, duties, and other tariff-related amounts to FedEx purportedly imposed pursuant to tariffs declared under the IEEPA (the "New Jersey Subclass").
>
> **Utah Subclass:** All individuals or entities in Utah that paid fees, surcharges, duties, and other tariff-related amounts to FedEx purportedly imposed pursuant to tariffs declared under the IEEPA (the "Utah Subclass").
>
> **Illinois Subclass:** All individuals or entities in Illinois that paid fees, surcharges, duties, and other tariff-related amounts to FedEx purportedly imposed pursuant to tariffs declared under the IEEPA (the "Illinois Subclass").
>
> **South Carolina Subclass:** All individuals or entities in South Carolina that paid fees, surcharges, duties, and other tariff-related amounts to FedEx purportedly imposed pursuant to tariffs declared under the IEEPA (the "South Carolina Subclass").
>
> **Massachusetts Subclass:** All individuals or entities in Massachusetts that paid fees, surcharges, duties, and other tariff-related amounts to FedEx purportedly imposed pursuant to tariffs declared under the IEEPA (the "Massachusetts Subclass").

104. The Nationwide Class shall be referred to herein as the "Class." The New York Subclass, New Jersey Subclass, Utah Subclass, South Carolina Subclass, Massachusetts Subclass, and Illinois Subclass shall, taken together, be referred to herein as the "Subclasses."

105. Plaintiffs reserve the right to amend the Class and Subclass definitions if further investigation and discovery indicate that the Class and Subclass definitions should be narrowed, expanded, or otherwise modified.

106. Excluded from the Class and Subclasses are Defendants, their parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

107. This action has been brought and may be properly maintained on behalf of the Class and Subclasses proposed herein under Federal Rule of Civil Procedure 23.

108. **Ascertainability.** The particular members of the Class and Subclasses are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable and ascertainable because the Class and Subclasses are defined based on objective criteria. Defendants or their affiliates and agents possess the information and records to identify and contact Class and Subclass Members.

109. **Numerosity (Fed. R. Civ. P. 23(a)(1)):** Upon information and belief, the Class and Subclasses are so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class and Subclasses are currently unknown, such information is in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process.

110. **Commonality (Fed. R. Civ. P. 23(a)(2)):** There are questions of law and fact common to the Class and Subclasses that are capable of generating common answers, including:

whether Defendants engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein; whether Defendants' conduct was unlawful, unfair, deceptive, misleading, or otherwise actionable under applicable federal and state law; whether Defendants knew or should have known that the tariffs, customs duties, and ancillary fees imposed were unlawful; whether Defendants' conduct caused injury to Plaintiffs and Class and Subclass Members; whether Defendants were unjustly enriched as a result of the conduct alleged herein; and whether Defendants are liable to Plaintiffs and Class and Subclass Members for damages, restitution, disgorgement, or other equitable relief.

111. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of the claims of the members of the Class and Subclass, because, *inter alia*, all Class and Subclass Members have been injured through the uniform misconduct described above. Moreover, Plaintiffs' claims are typical of the Class and Subclass Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Subclass. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclasses.

112. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs will fairly and adequately protect the interests of the members of the Class and Subclasses. Plaintiffs and the members of the Class and Subclasses were all assessed tariffs and other collection duties as a result of the tariffs imposed by the United States pursuant to IEEPA. Plaintiffs have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs.

113. **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2))**: Defendants have acted on grounds that apply generally to the proposed Class and Subclasses, making declaratory

and injunctive relief appropriate with respect to the proposed Class and Subclasses as a whole. Defendants' uniform practice of collecting tariffs imposed by the United States pursuant to IEEPA from consumers and failing to reimburse consumers for these unlawful tariffs warrants class-wide declaratory and injunctive relief.

114. **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiffs and Class and Subclass Members. There are questions of law and fact common to all Class and Subclass Members that predominate over questions affecting only individual Class and Subclass Members. The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendants. It would be virtually impossible for a member of the Class and Subclass, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class and Subclass Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

115. Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Subclasses, and other equitable relief on grounds generally applicable to the entire Class and Subclasses, to enjoin and prevent Defendants from engaging in the acts described.

Unless the Class and/or Subclasses are certified, Defendants will be allowed to profit from their unfair and unlawful practices, while Plaintiffs and the members of the Class and Subclasses will have suffered damages. Unless Class- and Subclass-wide injunctions are issued, Defendants may continue to benefit from these alleged violations, and the members of the Class and Subclasses may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class and Subclasses as a whole.

116. These common questions are capable of class and subclass wide resolution because they arise from Defendants' uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendants' liability in a single adjudication and will materially advance the resolution of this litigation.

## CAUSES OF ACTION

### COUNT I
### UNJUST ENRICHMENT / RESTITUTION
### (On Behalf of Plaintiffs and the Class or in the alternative the Subclasses)

117. Plaintiffs incorporate each of the allegations in paragraphs 1-116 as if fully set forth herein.

118. Plaintiffs plead the equitable remedy of "unjust enrichment" or "restitution" because there was no contract between the Plaintiffs and Defendants.

119. Plaintiffs and the Class made payments to Defendants and Defendants have retained refunds from the federal government (and anticipate further refunds) to which, as between them and Defendants, Plaintiffs and the Class have a superior legal or equitable right.

120. Plaintiffs and Class Members conferred a direct financial benefit upon Defendants by paying tariffs and tariff-related charges, fees, and surcharges imposed by Defendants.

121. Defendants had knowledge of the benefit conferred by Plaintiffs and Class

Members, as FedEx consciously billed and collected tariffs and tariff-related charges.

122. Defendants knowingly and voluntarily received and accepted these benefits.

123. The IEEPA tariff-related charges Defendants imposed and collected were unlawful and unauthorized.

124. Defendants collected and retained funds to which they were not legally entitled.

125. Defendants also collected brokerage fees, administrative fees, and related ancillary charges based upon unlawful tariffs.

126. Defendants retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, subject to refund, and/or based on illegal IEEPA tariffs.

127. It would be inequitable and unjust for Defendants to retain these funds.

128. Plaintiffs and the Class Members are entitled to recover from FedEx regardless of whether Defendants, as the "importers of record" (or whether there is another importer of record), ultimately receive a refund from the United States. It would be manifestly unjust and inequitable for Defendants to retain money that Plaintiffs and the Class Members wrongfully paid to Defendants, regardless of whether Defendants are reimbursed any of that money, but that is especially true if Defendants are reimbursed any of that money.

129. Plaintiffs and Class Members suffered economic injury as a result of Defendants' unjust retention of these funds.

130. Defendants were unjustly enriched at the expense of Plaintiffs and Class Members.

131. Equity and good conscience require that Defendants disgorge all unlawfully obtained funds and make restitution to Plaintiffs and Class Members.

132. As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs and the Class have suffered actual financial injury in an amount to be determined at trial.

**COUNT II**
**Violation of the New York General Business Law § 349**
**(On behalf of Plaintiff Crespo Rosado and the New York Subclass)**

133. Plaintiffs incorporate each of the allegations in paragraphs 1-116 as if fully set forth herein.

134. Plaintiffs bring this cause of action on behalf of themselves and members of the New York Subclass against Defendant.

135. Plaintiffs and New York Subclass members are "persons" within the meaning of the New York General Business Law ("GBL") § 349(b).

136. FedEx is a "person, firm, corporation or association or agent or employee thereof" within the meaning of § 349(b).

137. Under GBL § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce are unlawful."

138. FedEx engaged in unfair, deceptive, and materially misleading acts and practices in the conduct of trade or commerce by:

a. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs for IEEPA tariffs, that FedEx knew or should have known were illegal and void;

b. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs ancillary fees connected to FedEx's role as a customs broker and importer of record, fees that would not have been imposed but for the IEEPA tariffs FedEx knew, should have known, and later came to know were illegal and void, and profiting by assessing said fees because, among other things, such fees were in excess of FedEx's actual costs for services;

c. Failing to refund money paid by consumers to FedEx to pay illegal IEEPA tariffs, thus causing financial harm to individual consumers and businesses like Plaintiffs; and

d. Failing to refund money paid by consumers to FedEx in the form of ancillary fees charged by FedEx in its role as a customs broker and importer

of record, thus causing financial harm to individual consumers and businesses like Plaintiffs, including, but not limited to, fees in excess of FedEx 's actual costs for services.

139. As a direct and proximate result of FedEx's unfair and deceptive trade practices, Plaintiff Crespo Rosado and the New York Subclass have suffered actual financial injury in an amount to be determined at trial.

**COUNT III**
**Violation of the South Carolina Unfair Trade Practices Act**
**(On behalf of Plaintiff G-Force Powersports and the South Carolina Subclass)**

140. Plaintiffs incorporate each of the allegations in paragraphs 1-116 as if fully set forth herein.

141. Plaintiffs bring this cause of action on behalf of themselves and members of the South Carolina Subclass against Defendant.

142. S.C. Code Ann. § 39-5-20 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

143. FedEx engaged in unfair, deceptive, and materially misleading acts and practices in the conduct of trade or commerce by:

a. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs for IEEPA tariffs, that FedEx knew or should have known were illegal and void;

b. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs ancillary fees connected to FedEx's role as a customs broker and importer of record, fees that would not have been imposed but for the IEEPA tariffs FedEx knew, should have known, and later came to know were illegal and void, and profiting by assessing said fees because, among other things, such fees were in excess of FedEx's actual costs for services;

c. Failing to refund money paid by consumers to FedEx to pay illegal IEEPA tariffs, thus causing financial harm to individual consumers and businesses like Plaintiffs; and

d. Failing to refund money paid by consumers to FedEx in the form of ancillary fees charged by FedEx in its role as a customs broker and importer of record, thus causing financial harm to individual consumers and businesses like Plaintiffs, including, but not limited to, fees in excess of FedEx's actual costs for services.

144. Defendants' actions could recur in the event other tariffs are imposed and declared illegal.

145. As a direct and proximate result of FedEx's unfair and deceptive trade practices, Plaintiff G-Force Powersports and the South Carolina Subclass have suffered actual financial injury in an amount to be determined at trial.

**COUNT IV**
**Violation of the New Jersey Consumer Fraud Act**
**(On behalf of Plaintiff Weinberg and the New Jersey Subclass)**

146. Plaintiffs incorporate each of the allegations in paragraphs 1-116 as if fully set forth herein.

147. Plaintiffs bring this cause of action on behalf of themselves and members of the New Jersey Subclass against Defendant.

148. This cause of action is brought pursuant to the New Jersey Consumer Fraud Act, codified under N.J.S.A. § 56:8-1 et seq. (the "NJCFA").

149. N.J.S.A. § 56:8-2 prohibits the "act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]"

150. The transactions at issue constitute "the sale … of merchandise" under the NJCFA.

151. The conduct alleged in this complaint constitutes deceptive and unconscionable acts and practices for the purposes of the NJCFA, and the conduct undertaken by FedEx in transactions resulted in the sale of services to consumers.

152. As alleged more fully above, FedEx violated the NJCFA by falsely and deceptively representing to Plaintiffs and the New Jersey Subclass that FedEx incurred and was merely passing through IEEPA related tariff charges. In reality, FedEx inflated these charges and ancillary fees for profit within duties incurred from CBP pursuant to the void and invalid IEEPA tariffs.

153. As a result of FedEx's conduct, Plaintiff Weinberg and the New Jersey Subclass have suffered ascertainable losses.

**COUNT V**
**Violation of the Utah Consumer Sales Practices Act**
**(On behalf of Plaintiff Tran and the Utah Subclass)**

154. Plaintiffs incorporate each of the allegations in paragraphs 1-116 as if fully set forth herein.

155. Plaintiffs bring this cause of action on behalf of themselves and members of the Utah Subclass against Defendant.

156. The Utah Code Ann. § 13-11-4 states that "[a] supplier that engages in a deceptive act or practice in connection with a consumer transaction violates this chapter[.]"

157. FedEx is a "supplier" under Utah Code Ann. § 13-11-3(5).

158. FedEx engaged in unfair, deceptive, and materially misleading acts and practices in the conduct of trade or commerce by:

a. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs for IEEPA tariffs, that FedEx knew or should have known were illegal and void;

b. Deceptively and unfairly charging individual consumers and businesses like

Plaintiffs ancillary fees connected to FedEx's role as a customs broker and importer of record, fees that would not have been imposed but for the IEEPA tariffs FedEx knew, should have known, and later came to know were illegal and void, and profiting by assessing said fees because, among other things, such fees were in excess of FedEx's actual costs for services;

c. Failing to refund money paid by consumers to FedEx to pay illegal IEEPA tariffs, thus causing financial harm to individual consumers and businesses like Plaintiffs; and

d. Failing to refund money paid by consumers to FedEx in the form of ancillary fees charged by FedEx in its role as a customs broker and importer of record, thus causing financial harm to individual consumers and businesses like Plaintiffs, including, but not limited to, fees in excess of FedEx's actual costs for services.

159. FedEx acted knowingly and intentionally.

160. As a direct and proximate result of FedEx's unfair and deceptive acts, Plaintiff Tran and the Utah Subclass have suffered actual financial injury in an amount to be determined at trial.

**<u>COUNT VI</u>**
**Violation of the Illinois Consumer Fraud and Deceptive Practices Act**
**(On behalf of Plaintiff Avalos and the Illinois Subclass)**

161. Plaintiffs incorporate each of the allegations in paragraphs 1-116 as if fully set forth herein.

162. FedEx engaged in unfair and deceptive business practices in violation of 815 Ill. Comp. Stat. 505/2 et seq. (the "Illinois Consumer Fraud and Deceptive Business Practices Act" or "ICFA").

163. The ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact or the use or employment of any

practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' … in the conduct of any trade or commerce[.]"

164. FedEx acted with knowledge and intent.

165. FedEx engaged in unfair or deceptive acts in the conduct of trade or commerce by:

a. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs for IEEPA tariffs, that FedEx knew or should have known were illegal and void;

b. Deceptively and unfairly charging individual consumers and businesses like Plaintiffs ancillary fees connected to FedEx's role as a customs broker and importer of record, fees that would not have been imposed but for the IEEPA tariffs FedEx knew, should have known, and later came to know were illegal and void, and profiting by assessing said fees because, among other things, such fees were in excess of FedEx's actual costs for services;

c. Failing to refund money paid by consumers to FedEx to pay illegal IEEPA tariffs, thus causing financial harm to individual consumers and businesses like Plaintiffs; and

d. Failing to refund money paid by consumers to FedEx in the form of ancillary fees charged by FedEx in its role as a customs broker and importer of record, thus causing financial harm to individual consumers and businesses like Plaintiffs, including, but not limited to, fees in excess of FedEx's actual costs for services.

166. FedEx's conduct constitutes unfair business acts and practices because it caused substantial injury to consumers that was not reasonably avoidable by those consumers—who had no meaningful ability to contest or avoid tariff-related charges at the point of purchase—and the harm to consumers is not outweighed by any countervailing benefit to consumers or competition.

167. Plaintiffs and members of the putative Illinois Class suffered an ascertainable loss of money as a direct result of FedEx's unlawful trade practices, having paid ancillary fees for FedEx services that would not have been imposed absent the unlawful IEEPA tariff regime.

168. Plaintiff Avalos and members of the Illinois Subclass are entitled to recover their

actual damages, statutory damages, attorney fees, and costs as available under the Illinois Consumer Fraud and Deceptive Practices Act.

**COUNT VII**
**DECLARATORY RELIEF**
**(On Behalf of Plaintiffs and the Class or in the alternative the Subclasses)**

169. Plaintiffs incorporate each of the allegations in paragraphs 1-116 as if fully set forth herein.

170. An actual, justiciable controversy exists between Plaintiffs and Defendants regarding the rights and obligations of the parties with respect to IEEPA tariffs, customs duties, and ancillary fees collected by Defendants from Plaintiffs and Class Members purportedly authorized by the IEEPA. This controversy is not hypothetical or abstract: The Supreme Court has declared the underlying tariffs were not lawfully authorized, FedEx has already begun recovering the duty funds at issue from the CBP, and FedEx has not refunded the ancillary fees to Plaintiffs and Class Members.

171. Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §2201 that:

a. Defendants engaged in uniform conduct of charging tariffs authorized by the IEEPA to consumers such as Plaintiffs and Class Members when those tariffs and customs duties were not lawfully authorized;

b. Defendants knew or should have known that the tariffs and customs duties were unlawfully imposed;

c. Defendants' conduct caused injury to Plaintiffs and Class Members; and

d. Defendants are obligated to return to Plaintiffs and proposed Class Members all IEEPA tariffs, customs duties, and ancillary fees collected from them together with interest.

172. Declaratory relief is necessary and appropriate because Defendants collected duties and ancillary fees pursuant to tariffs that the Supreme Court has declared were never lawfully authorized and Defendants have not returned those sums to consumers who paid them. Without

judicial intervention, Plaintiffs and the Class have no assurance that Defendants will return the unlawfully collected sums.

173. Class Members have no alternative remedy. Because Defendants served as the importer of record, only Defendants have standing to seek a refund from the government. Individual businesses and consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendants. Without the declaratory relief sought in this action, Class Members will be left without any mechanism to recover the unlawful tariffs and ancillary fees they were forced to pay.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

A. For an order certifying the Class and naming Plaintiffs as the representatives for the Class and Plaintiffs' attorneys as Class Counsel;

B. For an order declaring that Defendants' conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D. For compensatory, statutory, nominal, and punitive damages in amounts to be determined by the Court and/or jury;

E. For an award of prejudgment interest on all amounts;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive and declaratory relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit as allowed by law; and

I. For an order providing for all other such relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: November 4, 2026. Respectfully Submitted,

*/s/ J. Gerard Stranch, IV*
**J. Gerard Stranch, IV (BPR 23045)**
Michael Tackeff (BPR 036953)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

***Plaintiffs' Interim Lead Class Counsel***

Matthew E. Lee*
**LEE SEGUI, PLLC**
421 N. Harrington St., Suite 460
Raleigh, NC 27603
855-496-7500
mlee@leesegui.com

Stuart A. Davidson*
**ROBBINS GELLER RUDMAN & DOWD LLP**
225 NE Mizner Boulevard, Suite 720
Boca Raton, FL 33432
Telephone: 561-750-3000
sdavidson@rgrdlaw.com

John A. Yanchunis*
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street 7th Floor
Tampa, Florida 33602
T: (813) 223-5505
F: (813) 223-5402
JYanchunis@forthepeople.com

Lynn A. Toops*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com

Carlos F. Ramirez*
**REESE LLP**
100 West 93rd Street, 16th Floor

New York, New York 10025
Phone: (212) 643-0500
Fax: (212) 253-4272
cramirez@reesellp.com

***Plaintiffs' Executive Committee***

* admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, I filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send notification to all counsel of record.

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV (TN BPR 23045)